THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PHILIP PAPRIN, Defendant.

City Magistrates' Court of New York, Borough of Queens, Second District, March 11, 1936.

*James Hurley, Assistant Corporation Counsel* [*James Hurley* and *J. G. L. Malloy* on the brief], for the plaintiff.

*Harry L. Marcus*, for the defendant.

SAVARESE, C. M. This is a criminal proceeding. A trial of all the issues was duly had on February 7, 1936, and decision reserved.

The defendant was charged by the department of health of the city of New York with violating section 139, subdivision 5, of the Sanitary Code, the complaint reading as follows: " Complainant, Harry Morpurgo, Inspector of the Board of Health; Defendant, Philip Paprin, dealer in foods at 6021 Roosevelt Avenue, Woodside, County of Queens, on the 11th day of October, 1935, the defendant unlawfully had a certain food, to wit; a quantity of rice pudding which was adulterated in that same was colored whereby it was made to appear better than it really was, by the addition of tartrazine, a yellow coal tar derivative. That a certificate of analyses of Nathan Goldstone, a chemist in the employ of the Department of Health, is hereby attached."

" CHEMIST'S CERTIFICATE.

" Sample of rice pudding numbered 1241N3, received by me on the 11th day of October, 1935. That on the 16th day of October, 1935, I completed a chemical analyses and examination of the sample received by me as aforesaid, and found it to contain a yellow color having the characteristic reaction of tartrazine, a coal tar derivative, and find the sample to be adulterated and also that this color simulates the color of eggs."

The defendant owned and operated a restaurant at 6021 Roosevelt avenue, Woodside, Queens county. On October 11, 1935, a health officer called to make a routine inspection, taking two samples of rice pudding from a pan in the kitchen of the premises, leaving one

with the defendant and delivering the other to the health department laboratories to be analyzed for artificial coloring. The analysis for artificial coloring only showed the rice pudding contained a yellow color having the characteristic reaction of tartrazine, a coal tar derivative which simulates the color of eggs.

The defendant testified he had been in the restaurant business for many years; that he had never before had a complaint or a summons for a violation of the Sanitary Code, and that he had never purchased or used tartrazine. No tartrazine was found on the premises. The chef testified that on the day in question he had made the rice pudding, using five eggs, a pound of rice, two quarts of milk, butter, cinnamon and vanilla extract. He further testified that he had been a chef for forty years, during all of which time he never used any coloring matter in the making of rice pudding, and that he never knew what tartrazine was; in fact, had never heard of it until the summons was served in this case.

Section 139, subdivision 5, of the Sanitary Code, with a violation of which this defendant is charged, reads as follows:

" § 139. Food; sale of adulterated or misbranded prohibited; the terms ' food,' ' adulterated,' and ' misbranded ' defined.

" No person shall have, sell, or offer for sale in the City of New York any food which is adulterated or misbranded. The term food as herein used shall include every article of food and every beverage used by man and all confectionery.

" Food as herein defined shall be deemed adulterated: * * *

" (5) If it is colored or coated or polished or powdered, whereby damage is concealed or it is made to appear better than it really is."

Briefs submitted by counsel on both sides presented an able and exhaustive study of the questions of law. The defense moved for an acquittal on many grounds, the more important of which are as follows:

1. That the use of tartrazine is not prohibited by law.

2. That there was no proof that the rice pudding in question was made to appear better than it really was.

3. That the information is defective.

4. That subdivision 5 of section 139 is invalid, void and unconstitutional.

The corporation counsel argues:

(a) That the information was sufficient and fully charged a violation of the section.

(b) That a violation of the section was established upon proof that the rice pudding " is colored " to make it " appear better than it really is."

Artificial coloring matters in food products are neither new nor novel. Their use is permitted by the Sanitary Code except those that come within the provisions of subdivisions 6 and 7 of section 139. Tartrazine does not come within these provisions. Both the health inspector and the chemist testified that tartrazine is non-poisonous and non-deleterious to health.

The mere presence of a yellow coloring matter " having the characteristic reaction of tartrazine which simulates the color of eggs," is not sufficient to substantiate the crime charged, unless it is affirmatively proven that no eggs were used in the rice pudding. There is no such affirmative proof in this case.

Nor does it appear from the testimony that tartrazine was used to conceal damage or defect.

The court knows of no standard for rice pudding with which a comparison can be made to determine whether or not this particular pudding was made to appear better than it really was. It is a well-known fact that the yolks of eggs vary in color from a pale yellow to a deep reddish yellow. Tartrazine was found in the pudding, but the prosecution did not prove that eggs were not used. On the other hand, the defense affirmatively testified the pudding contained eggs. If both were used, it would be impossible to determine whether the color was due to the tartrazine or to the eggs; hence, whether the use of tartrazine made the rice pudding appear better than it really was, is a matter of mere speculation, conjecture and divided opinion, subject to one's whim and fancy. A rice pudding made with pale-colored yolks of eggs would not appeal to some because it might appear not to contain eggs, while a rice pudding which is too yellow might be less appetizing to others fearful that inferior eggs may have been used. For these reasons, the problem of determining whether there has been a violation within the meaning of subdivision 5 is beset with difficulties. It must rest entirely within the discretion and opinion of each individual inspector. In the absence of a standard of comparison, there certainly is no contemplation in the law to delegate to an inspector, as in this case, any such unlimited and unrestricted discretion.

How, then, can this defendant (or for that matter, any person), under similar circumstances, know when he is and when he is not violating the law? It is commonly known that in cooking vegetables such as string beans, peas, spinach, broccoli, etc., sodium bicarbonate is used to make them appear greener and fresher. Can it be said that the use of sodium bicarbonate is a violation because the food " is made to appear better than it really is?" Hardly.

Yet the last eleven words of subdivision 5 read, " or it is made to appear better than it really is," which this defendant is charged with violating. This language is ambiguous, indefinite and uncertain.

The authorities are numerous which hold that a criminal statute, to be valid, must be so clearly and definitely expressed that an ordinary man can determine in advance whether his contemplated act is within or without the law. The Court of Appeals in *People* v. *Stoll* (242 N. Y. 453, at p. 463) held: " A penal statute should use language which is clear so that all who read it may know what act is forbidden. * * * the courts may not by forced construction create a crime." Laws which create crime ought to be so explicit that all men subject to their penalties may know what to avoid. Before a man can be punished, his case must be plainly and unmistakably within the statute.

The court, therefore, finds that the use of tartrazine in foods is not prohibited; that tartrazine was not used in the instant case to conceal damage or defect; that the complaint and information herein is defective in that it fails to allege that the rice pudding was for sale or offered for sale; that subdivision 5 of section 139 of the Sanitary Code, and, more particularly, the latter portion thereof, is ambiguous, uncertain and indefinite, hence invalid.

The information is dismissed, and the defendant discharged.